T.C. Memo. 2013-241

UNITED STATES TAX COURT

BONITA R. HUGEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4246-12.                    Filed October 23, 2013.

Teresa M. Gaffney, for petitioner.

Randall B. Childs, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge: This matter is before us on respondent's motion for

summary judgment (respondent's motion).[1] We shall grant respondent's motion.

_____

[1]Although we ordered petitioner to file a response to respondent's motion, she failed to do so.

[*2]                                    Background

The record establishes and/or the parties do not dispute the following.

At all relevant times, petitioner resided in Tampa, Florida.

During at least 2008, petitioner owned certain residential real property (petitioner's rental property) that she had purchased in order to generate some rental income. Sometime during 2008, petitioner's rental property was the subject of a foreclosure action and was sold (forced sale of petitioner's rental property) for an amount that was less than the amount outstanding on the mortgage loan that petitioner had obtained when she purchased that property. As a result of the forced sale of petitioner's rental property, petitioner realized cancellation of indebtedness income (COI income).

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for petitioner's taxable year 2008 (2008 return). In that return, petitioner reported total income of $194,506, Federal income tax (tax) of $43,890, and tax due of $36,552. Included in total income of $194,506 was $142,910 of COI income that petitioner showed as "Other income" (petitioner's claimed COI income ) on page 1, line 21, of her 2008 return. Petitioner included on that line the following typewritten explanation: "CANCELED DEBT INCOME". Petitioner did not

**[\*3]** include in her 2008 return any other explanation or information with respect to petitioner's claimed COI income.

On April 27, 2009, pursuant to section 6201(a)(1),[2] respondent assessed the tax of $36,552 shown in petitioner's 2008 return.

On July 8, 2009, petitioner filed Form 1040X, Amended U.S. Individual Tax Return, for petitioner's taxable year 2008 (2008 amended return). In that amended return, petitioner claimed, inter alia, zero COI income and a refund of $3,679 (2008 refund claim).

In petitioner's 2008 amended return, petitioner provided the following explanation for the change in that amended return of her treatment in her 2008 return of petitioner's claimed COI income of $142,910: "Cancellation of debt incorrectly reported as income Form 982 attached." In Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment) (Form 982), that petitioner attached to her 2008 amended return, petitioner indicated that petitioner's claimed COI income of $142,910 reported in her 2008 return should have been reported as zero in her 2008 return because that COI

---

[2]All section references are to the Internal Revenue Code (Code) in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*4]** income was attributable to "Discharge of qualified personal residence indebtedness".

Petitioner received from an office of the Internal Revenue Service (Service) in Philadelphia, Pennsylvania, a letter dated October 6, 2009, with respect to her 2008 amended return. That letter stated in pertinent part:

> We reviewed your amended tax return for the tax period [2008] * * *. We cannot finish processing your claim until we receive supporting information for each item you asked us to change.
>
> Please provide a completed Form 982 including line 10b in order to support your claim on line 1 of Form 1040X.
>
> Please send the information we asked for within 30 days from the date of this letter. If we do not hear from you, we cannot process your tax return and your account may be incorrect or incomplete.

By letter dated March 8, 2010, the Service denied in part petitioner's 2008 refund claim that she based on her claim in her 2008 amended return that she has zero COI income. That letter stated in pertinent part:

> We partially disallowed your claim because it is only allowed to take the difference between the cancelled debt and the fair market value [of the real property]. The portion of the cancellation of debt in the amount of $102,910.00 is still taxable.
>
> *       *       *       *       *       *       *
>
> You have the right to appeal our decision to partially disallow your claim. * * * If we do not hear from you within 30 days from the date of this letter, we will process your case without further action.

**[*5]** Petitioner filed a written protest (petitioner's protest) with respondent's Appeals Office (Appeals Office) in which she protested the Service's proposed partial disallowance of her 2008 refund claim that the Service based on its proposed inclusion in income for her taxable year 2008 of COI income of $102,910 (petitioner's COI income in question).

Around December 14, 2010, petitioner's protest was referred to the Appeals Office in Tampa, Florida (Tampa Appeals Office), where petitioner resided. The Appeals officer with the Tampa Appeals Office (Tampa Appeals officer) who was assigned that protest sent to petitioner a letter dated January 5, 2011. That letter stated in pertinent part:

> I have received your case and will attempt to resolve your dispute with the Compliance function of the Internal Revenue Service. The function of the Office of Appeals is to resolve tax disputes between the Taxpayers and the Service without the need of a formal court hearing. * * *
>
> In order to make a decision I will need you to answer the following questions. * * *
>
> 1. When did you buy your home?
>
> 2. How much did you originally pay for your home?
>
> 3. Did you refinance the home?
>
> 4. How much did you refinance it for?

**[*6]** 5. How many times did you refinance it, and for how much each time?

6. If you did refinance it, what did you use the monies acquired from refinancing for? If more than one use list each one and the corresponding amount.

7. What was the outstanding amount owed on the home just prior to refinancing?

8. Did the Bank (Mortgage Company) Foreclose or Repossess your home prior to the short sale?

9. If the home was not repossessed did you agree to the short sale?

10. When did the short sale take place?

11. Please explain how you were the victim of "the housing fraud scam"?

\*      \*      \*      \*      \*      \*      \*

In addition I have enclosed an Insolvency Worksheet which you should fill out as accurately as possible as there is an Insolvency Exclusion which you may qualify for. I have also enclosed a Form 656-B (Offer in Compromise Booklet) for you to look over. It offers you the ability to settle a tax liability for less than what you owe depending on your financial status.

The Tampa Appeals officer sent to petitioner another letter dated February 24, 2011. That letter stated: "I received your case on 1/3/2011 and mailed you a letter requesting some additional information on 1/5/2011. I have not received a

**[*7]** reply and am wondering if you are still interested in appealing the partial disallowance decision?  If you are please forward your answers to me as soon as possible."

Petitioner did not provide any information in response to the Tampa Appeals officer's requests for information, including his request for the so-called insolvency worksheet.

By letter dated April 19, 2011 (Tampa Appeals April 19, 2011 letter), the Tampa Appeals Office sustained the proposed inclusion in petitioner's income for her taxable year 2008 of petitioner's COI income in question and denied her 2008 refund claim to that extent.  That letter stated:

> Since you failed to respond to our inquiries we are sorry, but we cannot allow the above claim for an adjustment to your tax, for the following reason:
>
> Qualified principal residence indebtedness is a mortgage you took out to buy, build, or substantially improve your principal residence.  It also must be secured by your principal residence.  If the amount of your original mortgage is more than the cost of your principal residence plus the cost of any substantial improvements, only the debt that is **not** more than the cost of your principal residence plus improvements is qualified principal residence indebtedness.  Any debt secured by your principal residence that you use to refinance qualified principal residence indebtedness is treated as qualified principal residence indebtedness, but only up to the amount of the old mortgage principal just before the refinancing.  Any additional debt you incurred to substantially improve your principal residence is also treated as qualified principal residence indebtedness.

[*8]  If only a part of a loan is qualified principal residence indebtedness, the exclusion applies only to the extent the amount discharged exceeds the amount of the loan (immediately before the discharge) that is **not** qualified principal residence indebtedness.

Our decision is based on provisions of the Internal Revenue laws and regulations.  This letter is your legal notice that your claim is fully disallowed.

Around January 26, 2011, petitioner's protest was also referred to the Appeals Office in Philadelphia, Pennsylvania (Philadelphia Appeals Office).[3]  On May 20, 2011, the Appeals officer with the Philadelphia Appeals Office (Philadelphia Appeals officer) who was assigned that protest had a telephonic conference with petitioner's representative.[4]  Thereafter, on the same date, petitioner's representative sent by mail to the Philadelphia Appeals officer a letter in which he memorialized that telephonic conference and to which he attached, inter alia, (1) a "Real Estate Settlement Statement" relating to petitioner's purchase of petitioner's rental property; (2) a "Financial Insolvency Worksheet" that showed that petitioner was insolvent as of the day before the forced sale of petitioner's rental

---

[3]It is unclear why petitioner's written protest was referred not only to the Appeals Office in Tampa, Florida, where petitioner resided, but also to the Appeals Office in Philadelphia, Pennsylvania, where she did not reside.

[4]On February 10, 2011, before the telephonic conference on May 20, 2011, petitioner's representative had sent by facsimile to the Philadelphia Appeals officer signed Form 2848, Power of Attorney and Declaration of Representative, authorizing him to represent petitioner with respect to petitioner's protest.

[*9] property; and (3) a revised Form 982 in which petitioner claimed that petitioner's claimed COI income reported in her 2008 return should have been claimed as zero in her 2008 return because that COI income was attributable to "Discharge of qualified real property business indebtedness" and not to "Discharge of qualified personal residence indebtedness" as claimed in Form 982 attached to petitioner's 2008 amended return.

On June 2, 2011, petitioner's representative had another telephonic conference with the Philadelphia Appeals officer. Thereafter, on the same date, petitioner's representative sent by facsimile to the Philadelphia Appeals officer a memorandum in which he memorialized that telephonic conference and to which he attached certain financial documents that that Appeals officer had requested during the telephonic conference.

After reviewing the documents and other information petitioner provided, the Philadelphia Appeals officer concluded that petitioner was insolvent when the forced sale of petitioner's rental property took place and that consequently petitioner's COI income in question was excludible from her income for her taxable year 2008.

[*10] The Philadelphia Appeals officer prepared a document entitled "Appeals Transmittal and Case Memo" dated June 24, 2011 (Philadelphia Appeals June 24, 2011 case memo). That memo stated in pertinent part:

> Resolution Reason: TP [petitioner] provided new facts and arguments and without involving exam, Appeals made a determination.
>
> Special Features:
> TP [petitioner] amended return and asked for $40,321 reduction in tax. Exam previous reduced tax $14,797 3-22-2010. Tax comps for the remaining $25,524 are in the file.
> TP originally included COD [cancellation of debt] income on 1040 [petitioner's 2008 return]. She was victim of a mortgage scam. TP submitted documents and schedules to prove she was insolvent at the time the debt was forgiven. Therefore it is not taxable to her. Exam previously reduced COD income $40,000. AO [Philadelphia Appeals officer] is reducing it the remaining $102,910. The total 1099C was $142,910.

The Philadelphia Appeals Office sent to petitioner a letter dated July 6, 2011 (Philadelphia Appeals July 6, 2011 letter). That letter stated:

> Our office has completed its review of your claim for abatement and/or refund of taxes we have charged you. Based on the information submitted, I am pleased to tell you we are allowing the full amount of your claim. After your claim is processed, we will send you a notice explaining any changes that we made to your tax account.

By letter dated August 24, 2011, to the Philadelphia Appeals officer, petitioner's representative acknowledged petitioner's receipt of a $6,506 refund check dated July 29, 2011, for her taxable year 2008.

[*11]  By letter dated November 9, 2011, petitioner's representative submitted to the Philadelphia Appeals officer petitioner's request for administrative costs.

The Philadelphia Appeals Office sent to petitioner a letter dated November 18, 2011.  That letter stated in pertinent part:

> We completed our review of your claim for administrative costs under Section 7430 of the Internal Revenue Code.  We have fully disallowed your claim because:
>
> - •  You can't be treated as the prevailing party since the IRS has established that its position was substantially justified as of the date you incurred the costs.
>
> - •  Our records don't show that you filed your claim for costs within 90 days of our final decision.
>
> You may appeal this decision by filing a petition with the Tax Court for reasonable administrative costs. * * *

The Philadelphia Appeals Office also sent to petitioner's representative a letter dated November 18, 2011.  Attached to that letter was a "Brief Narrative for Appeals Case Memo".  That narrative stated in pertinent part under the heading "Explanation":

> TP [petitioner] filed 2008 1040 4-15-2009 with forgiveness of debt income fully included on the tax return.  The tax return reported tax due of $43,890, $7338 withheld leaving $36,552 balance owed.  The TP then filed a 1040X in July 2009. * * * The 1040X return reduced taxable income by forgiveness of debt based on fact it was principal residence indebtedness on form 982.  The residence was NOT the TP primary residence and this exclusion does not apply.  But IRS exam

**[\*12]** adjusted the return based on the fair market value of the property (COD income equals the loan balance over the properties FMV). At no time did the TP state she was insolvent. The amended return was also incorrect in that Form 4797 was not completed.

The TP hired a new preparer who represented the case in appeals. POA brought up the insolvency issue to AO. AO first contacted POA 2-17-2011, received packet with amended return still incorrect (Form 4797 not correct, insolvency schedule not complete) 6-1-2011. POA sent a more detailed schedule with documentation 6-8-2011 which AO accepted. * * *

On February 14, 2012, petitioner filed a petition for administrative costs (petition) with the Court in which she claimed administrative costs under section 7430(a)(1).

Discussion

We may grant summary judgment where there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). We conclude that there is no genuine dispute as to any material fact regarding the issue raised in respondent's motion.

Section 7430(a)(1) authorizes an award to the "prevailing party" of reasonable administrative costs incurred in connection with an administrative proceeding within the Service involving the determination, collection, or refund of any tax,

**[\*13]** interest, or penalty under the Code, provided that certain requirements are satisfied.[5]

Section 7430(c)(4)(B)(i) provides the following exception to the definition of the term "prevailing party" in section 7430(c)(4)(A): "A party shall not be treated as the prevailing party in a proceeding * * * if the United States establishes that the position of the United States in the proceeding was substantially justified."

The position of the United States is substantially justified if it "is one that is 'justified to a degree that could satisfy a reasonable person' or that has a 'reasonable basis both in law and fact.'" Swanson v. Commissioner, 106 T.C. 76, 86 (1996) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). "A position has a reasonable basis in fact if there is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Corkrey v. Commissioner, 115 T.C. 366, 373 (2000) (citing Underwood, 487 U.S. at 564-565). In determining whether the position of the Commissioner of Internal Revenue (Commissioner) was substantially justified, we must "consider the basis for * * * [the Commis-

---

[5]The issue of whether petitioner meets the requirements of sec. 7430(c)(4) in order to qualify as the "prevailing party" is not raised in respondent's motion. That is because, regardless of whether petitioner meets those requirements, respondent will prevail if respondent satisfies respondent's burden of establishing that respondent's position in the administrative proceeding was substantially justified. See sec. 7430(c)(4)(B)(i).

**[*14]** sioner's] legal position and the manner in which the position was maintained." Wasie v. Commissioner, 86 T.C. 962, 969 (1986). Whether the Commissioner acted reasonably will be resolved "upon those available facts which formed the basis for the position taken in the * * * [administrative proceeding], as well as upon any legal precedents related to the case." Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997). The Commissioner's position "may be incorrect but substantially justified 'if a reasonable person could think it correct'." Id. (quoting Underwood, 487 U.S. at 566 n.2).

A significant factor in determining whether the Commissioner's position is substantially justified as of a given date is whether on or before that date the taxpayer has presented all relevant information under the taxpayer's control and relevant legal arguments supporting the taxpayer's position. Corson v. Commissioner, 123 T.C. 202, 206-207 (2004); sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

The Commissioner's concession of an issue is not conclusive as to whether the Commissioner's position with respect to that issue was substantially justified. See Corkrey v. Commissioner, 115 T.C. at 373; Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner, 86 T.C. at 968-969. In other words, the Commissioner's concession of an issue, standing alone, does not establish that the

**[*15]** Commissioner took an unreasonable position with respect to that issue. See Lavallee v. Commissioner, T.C. Memo. 1997-183, 1997 WL 189928, at *5.

For purposes of an administrative proceeding, the "position of the United States" means "the position taken in an administrative proceeding to which subsection (a) [of section 7430] applies as of the earlier of--(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency." Sec. 7430(c)(7)(B).

On the record before us, we conclude that respondent's position in the administrative proceeding is respondent's position as of April 19, 2011, the earliest date on which petitioner received a "notice of the decision" of the Appeals Office with respect to petitioner's protest, as reflected in the Tampa Appeals April 19, 2011 letter. See id.

It is respondent's position in the instant proceeding that on or before April 19, 2011, the date on which the Tampa Appeals Office sent to petitioner the Tampa Appeals April 19, 2011 letter, petitioner had failed to provide that office with records and other documentation and information that established petitioner's entitlement under section 108 to exclude from her income for her taxable year 2008 petitioner's COI income in question. As a result, according to respondent,

**[\*16]** the Tampa Appeals Office's position to include in petitioner's income that COI income in question, as reflected in the Tampa Appeals Office's April 19, 2011 letter, was reasonable in fact and in law and thus was substantially justified under section 7430(c)(4)(B)(i).

Petitioner's only argument with respect to whether respondent's position in the administrative proceeding was substantially justified is set forth in petitioner's petition.[6]  In the petition, petitioner alleged in pertinent part:

> The Petitioner had to appeal an over assessment of tax liability for Form 1040 Tax Year 2008.  The Petitioner received a One Hundred Percent (100%) favorable determination by the Internal Revenue Service Appeals [Office].  The original finding of tax liability was reversed.  Pursuant to 26 U.S.C. § 7430 the prevailing party may file a request for an award of reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service.

While respondent acknowledges that petitioner received a "One Hundred Percent (100%) favorable determination" by the Philadelphia Appeals Office and that the "original finding of tax liability was reversed", respondent maintains that those facts, standing alone, do not entitle petitioner to administrative costs where respondent establishes, as respondent claims respondent has, that respondent's position in the administrative proceeding was substantially justified.  We agree.

---

[6]See supra note 1.

[*17] Before turning to an examination of respondent's position as of April 19, 2011, to include in petitioner's income under section 61(a) petitioner's COI income in question, we will summarize the applicable provisions of sections 61(a) and 108 with which petitioner was obligated to comply in order to be entitled to exclude that income under section 108.

Section 61(a) defines the term "gross income" broadly to mean all income from whatever source derived, including income from discharge of indebtedness (i.e., COI income). See sec. 61(a)(12). Section 108(a) provides certain exceptions to section 61(a)(12). As pertinent here, section 108(a)(1)(B) excludes from gross income any amount that otherwise would be includible in gross income by reason of the discharge in whole or in part of indebtedness of the taxpayer if the discharge occurs when the taxpayer is insolvent; i.e., the taxpayer is insolvent immediately before the discharge. See sec. 108(d)(3). The amount of COI income excluded under section 108(a)(1)(B) is not to exceed the amount by which the taxpayer is insolvent. See sec. 108(a)(3). "The burden of proving insolvency under section 108(a)(1)(B) is on * * * [the taxpayer]." Bressi v. Commissioner, T.C. Memo. 1991-651, 1991 Tax Ct. Memo LEXIS 693, at *18, aff'd without published opinion, 989 F.2d 486 (3d Cir. 1993).

**[*18]** We turn now to an examination of respondent's position as of April 19, 2011. As we do so, we bear in mind that we concluded in <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. at 443, that our resolution of whether respondent acted reasonably in taking the position as of April 19, 2011, to include in petitioner's income for her taxable year 2008 petitioner's COI income in question, as reflected in the Tampa Appeals April 19, 2011 letter, is to be based "upon those available facts which formed the basis for the position taken in the * * * [administrative proceeding], as well as upon any legal precedents related to the case." We also bear in mind that we concluded in <u>Corson v. Commissioner</u>, 123 T.C. at 206-207, that a significant factor in our determination of whether the position of respondent as of April 19, 2011, was substantially justified is whether on or before April 19, 2011, the date on which respondent sent to petitioner the Tampa Appeals April 19, 2011 letter, petitioner had presented to respondent all relevant information under her control and relevant legal arguments supporting her position. <u>See also</u> sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

In support of respondent's position as of April 19, 2011, to include in petitioner's income for her taxable year 2008 petitioner's COI income in question, the Tampa Appeals Office stated in pertinent part in the Tampa Appeals April 19, 2011 letter: "Since you failed to respond to our inquiries we are sorry, but we

[*19] cannot allow the above claim for an adjustment to your tax". In other words, the Tampa Appeals Office made the determination in the Tampa Appeals April 19, 2011 letter that petitioner is not entitled to exclude from her income for her taxable year 2008 petitioner's COI income in question because petitioner had failed to meet her burden of establishing as of April 19, 2011, that she was insolvent immediately before the forced sale of petitioner's rental property.

We have found that petitioner did not provide any information to the Tampa Appeals Office in response to the Tampa Appeals officer's requests for information, including his request for the so-called insolvency worksheet. We have further found that petitioner did not provide to respondent any records, documents, or other information that tended to show that she was insolvent immediately before the forced sale of petitioner's rental property until petitioner's representative sent to the Philadelphia Appeals officer on May 20 and June 2, 2011, certain documents and other information. It was only after reviewing those documents and that other information that petitioner sent to him on those two dates that the Philadelphia Appeals officer was able to, and did, conclude that petitioner was insolvent immediately before the forced sale of petitioner's rental property and

**[\*20]** that consequently petitioner's COI income in question was excludible from her income for her taxable year 2008.[7]

On the record before us, we find that as of April 19, 2011, the date on which the Tampa Appeals Office sent to petitioner the Tampa Appeals April 19, 2011 letter, petitioner had not provided to the Tampa Appeals officer any records, documentation, or other information in support of her position that she is entitled under section 108 to exclude from her income for her taxable year 2008 petitioner's COI income in question. On the record before us, we find that as of that date, April 19, 2011, petitioner had failed to satisfy her burden of establishing by providing records and other pertinent documentation and information to a representative of the Tampa Appeals Office[8] (1) that she was insolvent immediately before the forced sale of petitioner's rental property and (2) that she is entitled under section 108 to exclude from her income for her taxable year 2008 petitioner's COI income in question.

---

[7]The Philadelphia Appeals officer's conclusion in favor of petitioner was set forth in both the Philadelphia Appeals June 24, 2011 case memo and the Philadelphia Appeals July 6, 2011 letter.

[8]Nor did petitioner provide any records, documents, or other information to the Philadelphia Appeals Office until after the Tampa Appeals Office had sent her the Tampa Appeals April 19, 2011 letter.

**[*21]** Based upon our examination of the entire record before us, we find that respondent's position as of April 19, 2011, to include in petitioner's income for her taxable year 2008 petitioner's COI income in question, as determined in the Tampa Appeals April 19, 2011 letter, had a reasonable basis in both fact and law. On that record, we further find that respondent has satisfied respondent's burden under section 7430(c)(4)(B)(i) of establishing that respondent's position in the administrative proceeding was substantially justified. On the record before us, we hold that petitioner is not entitled to an award of administrative costs under section 7430(a)(1).

We have considered all of the parties' respective contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>An order granting respondent's motion and decision for respondent will be entered</u>.